IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRIAN P. SHEBELSKE,

                      OPINION and ORDER

        Plaintiff,

                      15-cv-072-bbc

   v.

MARATHON COUNTY ADULT CORRECTION
FACILITY, WAUSAU FAMILY MEDICINE CLINIC,
RANDY HOENISCH, ROBERT DICKMAN, SETH WISKOW,
CARRY PELLOWSKE, DR. STRICK, DR. RUIZE,
PRACTIONER THAO and RN THOMAS RALPH,

        Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

In this civil action, plaintiff Brian P. Shebelske, a prisoner at the Oshkosh Correctional Institution, contends that when he was a pretrial detainee at the Marathon County jail, staff members delayed his medical treatments, causing him permanent injury. Because plaintiff is a prisoner, I must screen his proposed complaint under 28 U.S.C. § 1915A and dismiss any claims that are legally frivolous, malicious, fail to state a claim upon which relief may be granted or ask for money damages from a defendant who by law cannot be sued for money damages.

In addressing any pro se litigant's complaint, the court must read the allegations of the complaint generously. Haines v. Kerner, 404 U.S. 519, 521 (1972). After reviewing the proposed complaint, I conclude that plaintiff does not allege sufficient facts to state a claim

1

under Fed. R. Civ. P. 8. Accordingly, I will give plaintiff an opportunity to file an amended complaint that gives fair notice of his claims.

Plaintiff alleges the following facts in his proposed complaint.

ALLEGATIONS OF FACT

In 2009 and 2010, plaintiff Brian P. Shebelske was a pretrial detainee at the Marathon County jail. For approximately four weeks in 2009, plaintiff complained (he does not say to whom) of "shortness of breach, lightheadedness, weak[ness], and a racing heart, along with an up[]set stomach." Plt.'s Cpt., dkt. #1, at 4. Sometime during those few weeks, plaintiff was seen twice by defendant RN Thomas Ralph, who checked his blood pressure and told him that in order to see a nurse practitioner or doctor, he would have to complete a "medical request slip." Id.

On September 15, 2009, plaintiff was seen by defendant Melee Thao, a nurse practitioner, and defendant Dr. Ruize, a physician. They determined that plaintiff had severe anemia and required a visit to the UW-Wausau Family Medicine Clinic the following day. Defendant "Robert Dickman/John Doe," id., the jail administrator, and defendants Seth Wiskow and Carry Pellowski (spelled "Pellowske" in the caption), both jail supervisors, were all in charge of organizing plaintiff's transportation to the September 16 appointment at the Wausau clinic. (Plaintiff does not explain what happened on September 16 and why he did not go to that appointment.)

On September 19, 2009, plaintiff asked a staff member whether his transportation

had been arranged, and plaintiff was informed that he would be seen by medical staff on September 21, 2009. On September 19, 2009, plaintiff filed a grievance for delay in medical treatment. On September 21, 2009, plaintiff was seen by defendant Ralph, who apologized "for not getting [plaintiff] to the Wausau Family Medicine Clinic on September 16, 2009 per Dr. St[r]ick['s] orders." Id. at 5.

That same day, plaintiff "was rushed to Wausau Aspirus Hospital['s] emergency room." Id. He was admitted to the hospital because his "severe anemia of several week['s] duration[ was] exacerbated in the past 24-48 hours prior to [plaintiff's] admission." Id. Doctors at the hospital suspected that plaintiff's anemia "was chronic and progressive." Id. at 6. Plaintiff was also diagnosed with a vitamin B-12 deficiency.

Plaintiff was given multiple blood transfusions for the anemia, and he was given B-12 shots to treat his deficiency, with a prescription for them to continue on a daily, then monthly basis.

After his release from the hospital, plaintiff has experienced peripheral neuropathy (numbness), which plaintiff describes as "a condition that is irreversible." Id. Plaintiff complained about this numbness for months after his hospital stay. (Again, plaintiff does not say to whom he made these complaints.) On October 1, 2010, he filed a grievance related to not being seen for the numbness. On October 5, 2010, plaintiff's grievance was returned with the conclusion that he "may have a peripheral neuropathy from B-12 deficiency, which has nothing to do with the transfusion." Id. Nevertheless, on October 13, 2010, plaintiff went to the Wausau Family Medicine Clinic, and a doctor there confirmed

that plaintiff was experiencing numbness.

OPINION

Plaintiff asserts claims under 42 U.S.C. § 1983 for violations of his constitutional rights to medical care and claims for negligence and medical malpractice. His general theory is that his treatment was delayed, resulting in injuries to him. However, plaintiff fails to allege sufficient facts to state either a constitutional claim or a negligence claim because he does not explain any defendant's role in the delay of treatment and connect that delay with the injuries he reports.

Accordingly, I will give plaintiff an opportunity to amend his complaint to allege facts that do state claims under § 1983 and for negligence. If plaintiff chooses to amend his complaint, he must file an entirely new complaint that replaces his original complaint. This means that his amended complaint must contain a caption that lists all defendants he intends to sue and, in his amended complaint, he must allege all facts relevant to his medical care claim.

If plaintiff chooses to amend his complaint, he should read carefully the discussion below, which outlines the problems in his complaint, and he should talk about each problem. In particular, plaintiff should be sure to explain what *each* defendant knew about his condition and what that defendant did to harm him or cause delay in his treatment. Further, for each instance of delay, plaintiff should explain why he believes the delay caused him injury and he should explain what that injury is.

A. Constitutional Claim

Plaintiff contends that defendants violated the United States Constitution when they failed to provide him adequate medical care. As a pretrial detainee, his rights to medical care are protected by the Constitution's Fourteenth Amendment. The Court of Appeals for the Seventh Circuit has applied the same standard to medical care claims under both the Eighth Amendment and the Fourteenth Amendment. Smego v. Mitchell, 723 F.3d 752 (7th Cir. 2013). A jail official may violate a detainee's constitutional right to medical care if that official is "deliberately indifferent" to a "serious medical need." Estelle v. Gamble, 429 U.S. 97, 104-05 (1976).

A "serious medical need" may be a condition that a doctor has recognized as needing treatment or one for which the necessity of treatment would be obvious to a lay person. Johnson v. Snyder, 444 F.3d 579, 584-85 (7th Cir. 2006), overruled on other grounds by Hill v. Tangherlini, 724 F.3d 965 (7th Cir. 2013). "Deliberate indifference" means that the official is aware that the detainee needs medical treatment, but disregards the risk by consciously failing to take reasonable measures. Forbes v. Edgar, 112 F.3d 262, 266 (7th Cir. 1997). Thus, plaintiff's claim has three elements:

- (1) Did plaintiff need medical treatment?
- (2) Did defendants know that plaintiff needed treatment?
- (3) Despite their knowledge of the need, were defendants consciously failing to take reasonable measures to provide the necessary treatment?

Farmer v. Brennan, 511 U.S. 825, 837 (1994). This also means that the defendant must

have been personally responsible for the deliberate indifference. Id. at 843 n.8.

Plaintiff lists three instances times in which there was a delay in his medical treatment. First, he alleges that he requested medical care for his anemia-related-symptoms for four weeks before he was seen on September 15, 2009 by a nurse practitioner and doctor, though he was seen sometime during those four weeks by a nurse. There are several problems with plaintiff's complaint on this issue. He fails to identify to whom he made requests for treatment or what they knew about his condition. In particular, plaintiff cannot just say that a defendant knew that he requested medical treatment generally; he must allege exactly what each defendant knew about his medical condition. Plaintiff does say he saw defendant Ralph, a nurse, who told him to complete a medical request slip in order to be seen by a doctor, but plaintiff does not explain whether Ralph's actions caused any delay in his treatment or if they did, how they caused the delay.

Second, plaintiff discusses a delay of his September 16, 2009 appointment at the Wausau Family Medicine Clinic. Again, plaintiff does not say what happened or who is at fault for it. He says defendants Robert Dickman, Seth Wiskow and Carry Pellowski were in charge of arranging his transport but he does not explain whether they failed to make arrangements or what they did to cause the delay plaintiff experienced. Plaintiff also alleges that defendant Ralph apologized "for not getting [plaintiff] to the Wausau Family Medicine Clinic on September 16, 2009 per Dr. St[r]ick['s] orders." Plt.'s Cpt., dkt. #1, at 5. However, plaintiff does not explain what role defendant Ralph had in the incident, if any.

Third, plaintiff says he requested medical care for his numbness or "peripheral

6

neuropathy" for "months" after his hospital stay in September 2009 but that he was not seen until October 2010, after he filed a grievance. He was seen by Dr. Jenkins (who is not named as a defendant) and defendant Melee, but he does not say whether they had anything to do with the delay in his treatment. Again, plaintiff does not say enough to explain what happened to cause the delay or who he thinks is at fault. In addition, he does not explain what injuries he suffered as a result of the delay. He seems to suggest that the peripheral neuropathy resulted from the blood transfusion, but he does not explain the reasons he thinks that, but even if the blood transfusion caused his neuropathy, he does not explain how the delays in treatment occurring after the blood transfusion in September 2009 led to the neuropathy.

## B. Negligence

Plaintiff is also asserting claims against defendants for negligence and medical malpractice. Federal courts may exercise supplemental jurisdiction over a state law claim that is "so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Plaintiff's state law claims are part of the same case or controversy as his federal claims for violation of his Fourteenth Amendment rights, so I may exercise jurisdiction over the state law claims. To prevail on a claim for negligence in Wisconsin, plaintiff must prove that defendants breached their duty of care and plaintiff suffered injury as a result. Paul v. Skemp, 2001 WI 42, ¶ 17, 242 Wis. 2d 507, 520, 625

N.W.2d 860, 865.  As with his constitutional claims, plaintiff fails to explain how defendants breached their duty of care for the delays before September 15, 2009; on September 16, 2009; or after his hospital stay (which ended September 23, 2009).  In other words, he does not say what each defendant did or failed to do to cause the delays in his care, and how each delay caused him injury.  Plaintiff must explain how each defendant breached his or her duty of care to him before he can be allowed to proceed on claims for negligence.

### C.  Defendants

Plaintiff's claims against two of the named defendants present different problems.  First, the "Marathon County Adult Correctional Facility" is a building, so it cannot be sued.  Smith v. Knox County Jail, 666 F.3d 1037, 1040 (7th Cir. 2012).  Further, if plaintiff wishes to sue Marathon County, he should know that he cannot sue it under § 1983 unless he can prove that the county maintained a policy that resulted in the violation of his rights.  It is not enough for him to allege that the county is liable as a supervisor for the acts of its employees or that it can be held liable for failure to properly supervise its employees.  Fairley v. Fermaint, 482 F.3d 897, 904 (7th Cir. 2007) ("[U]nits of local government are responsible only for their policies rather than misconduct by their workers."); Jenkins v. Bartlett, 487 F.3d 482, 492 (7th Cir. 2007) ("A municipality may not be held liable under § 1983 based on a theory of respondeat superior or vicarious liability.").

Second, plaintiff named UW-Wausau Family Medicine Clinic as a defendant.  As an

initial point, plaintiff has not alleged any facts that suggest the clinic is at fault for delays in his treatment.  If plaintiff chooses to amend his complaint, he must explain what he believes the clinic or its medical staff did to harm him.  Furthermore, his claim under § 1983 applies only to unconstitutional policies, not merely unconstitutional actions carried out by staff. As an entity that contracted to perform essential government functions, the UW-Wausau clinic may be liable under § 1983 only if it had a *policy or custom* that violated the Constitution, but plaintiff has not alleged that it had such a custom or policy.  Shields v. Illinois Department of Corrections, 746 F.3d 782, 789 (7th Cir. 2014) ("[A] private corporation that has contracted to provide essential government services—in this case, health care for prisoners[—] . . . . cannot be held liable under § 1983 unless the constitutional violation was caused by an unconstitutional policy or custom of the corporation itself."). Merely employing medical staff who violated plaintiff's rights is insufficient.  Id.

With respect to plaintiff's negligence claim, he may also be required allege whether he has complied with the notice of claim statute, Wis. Stat. § 893.80.  In Rouse v. Theda Clark Medical Center, Inc., the Wisconsin Supreme Court held that the University of Wisconsin Hospital and Clinics Authority was a "political corporation" for the purposes of the notice of claim statute and required plaintiffs to follow the procedure before filing a lawsuit against that entity.  2007 WI 87, ¶ 39, 302 Wis. 2d 358, 381, 735 N.W.2d 30, 41. In May 2010, the Wisconsin Legislature amended the statute to exempt medical malpractice suits from the procedure, but the amendment does not apply to claims accruing before then, such as plaintiff's September 2009 claim.  Wisconsin Senate Bill Memo, 2009 Reg. Sess.

S.B. 127.  If plaintiff wants to pursue a claim against UW-Wausau Family Medicine Clinic for September 2009, he must say whether he has complied with the requirements of Wis. Stat. § 893.80.

In sum, plaintiff has failed to allege sufficient facts to state a claim under Fed. R. Civ. P. 8, but he will be given an opportunity to amend his complaint.  If he chooses to do so, he should be sure to explain what *each* defendant did to cause delay in his medical treatment or to otherwise harm him and how *each* delay in his treatment is related to any injury he sustained.

ORDER

IT IS ORDERED that

1.  Plaintiff Brian P. Shebelske's complaint, dkt. #1, is DISMISSED for failure to comply with Fed. R. Civ. P. 8.  He may have until April 24, 2015 to file an amended complaint that complies with the Federal Rules of Civil Procedure as described in this order.  If plaintiff fails to respond by that date, I will dismiss the case for plaintiff's failure to state a claim upon which relief may be granted and issue a strike under 28 U.S.C. § 1915(g).

2.  Defendant Marathon County Adult Correction Facility is DISMISSED from this

case because it is not a suable entity.

Entered this 27th day of March, 2015.

BY THE COURT:
/s/

_____
BARBARA B. CRABB
District Judge